STAPLES, J.
It is conceded that the assignment made by Champ Shepherd to the appellant was in payment of an individual debt due by the former to the latter. It is also conceded that the assignment is void unless it is made to appear that Shepherd was in advance to the partnership, or that it was made with the assent of the appellee. And this upon the'plain ground that a separate creditor who takes from one of the partners partnership assets for the payment of his separate debt without the knowledge or consent of the other partner, is guilty of a fraud and will be decreed to make restitution.
It is very clear, that Shepherd was not in' advance to the partnership at the time of the assignment, and it is admitted that the testimony fails to establish the appellee’s assent to the assignment, unless the depositions taken on the 13th May, 1879, are proper to be read. and considered by the court. The learned judge of the circuit court was of opinion that no sufficient excuse was offered for the laches of the appellant in failing to take these depositions until after the return and filing of the commissioner’s report; and upon that ground he declined to reopen the report or to consider the evidence. The case therefore turns mainly upon the correctness of this ruling.
It appears that the decree for the settlement of the partnership transactions' was entered at the November term, 1877. The commissioner after due notice to the parties concerned, commenced the account the 15th o'f December following, and closed it the 28th of August, 1878. In this report the debt against McCormick’s estate which had been assigned to the appellant, *is treated as still due to the partnership, and no exception was ever taken to this report, until the 20th of May, 1879, and the depositions relied on to sustain the exceptions were not taken until the 13th of May, 1879, about fifteen months after the account was commenced, and nearly nine months after it was completed.
The only excuse given for the long delay, the only explanation even suggested, is that set forth in appellent’s exception; and that is, the order of reference to the commissioner, did not direct any enquiry into the matter of the McCormick debt as assets of the partnership. Appellant’s counsel did not suppose the commissioner was authorized to pass upon the subject. It will be seen, however, that the decree of November, 1877, expressly required the commissioner to ascertain what were the assets of the firm at the date of its dissolution. What debts were due it, how evidenced, what portion had been collected, and what part remained uncollected, and what disposition had been made of the same. The partnership was dissolved in September. 1866, and the assignment to the appellant was not made until 1874.
The McCormick debt was’therefore undoubtedly partnership assets at the date of the dissolution. It was directly involved in the subject 'of enquiry, submitted to the commissioner, who must of necessity have reported upon the debt, what disposition had been made of it, and who had the control of it. This of course brought up the whole question of assignment. The parties and their counsel seemed so to understand *585 it. As early as December, 1877, the appellee took the deposition of witnesses to prove that the assignment was without his consent, and these witnesses were cross-examined upon this very point by the appellant’s counsel. But this is not *all. The appellee in his bill referred to the same matter, charged that his partner had no authority to use the partnership assets, in paying individual creditors, and made the appellant a party to the suit solely for the purpose of litigating and settling that question.
The appellant in his answer insisted that ¡ the assignment was valid, that it was made with the consent of the appellee, and on several occasions was ratified and approved by him.
Thus the parties were at issue upon the very point, and, as already stated, witnesses were examined in support of the averment of the bill, and upon this uncontradicted testimony, the commissioner based his report sustaining the claim of the appellee. The appellant might have taken his testimony at any time, whilst the account was being taken between December. 3 877. and August, 1878; he might have taken it within a reasonable time after the report was completed and returned. Why he did not do so, it is impossible to say. In view of the facts already stated, he and his counsel must have known, it was their duty to know, that the assignment was being investigated by the commissioner, and would be the subject, i'n part, of his report.
There is no pretence of after-discovered testimony. The only witnesses examined on the 13th of May, were the appellant himself, and his two attorneys, each of whom was familiar with the facts, from the beginning. and one of whom conducted the cross-examination of the appellee’s witnesses. It has been said, however, that the circuit i court had no discretion in the matter; that the appellant had the right to take his testimony at any time before the final hearing. In support of this view, the provisions of the thirty-sixth section, chapter 173, Code 1873. and a decree of this *court in Summers v. Darne, 31 Gratt. 791, are relied upon.
The section of the Code referred to. is as follows: “In a suit in equity, a deposition may be read if returned before the hearing of the cause, or though after an interlocutory decree, if it be as to a matter not thereby adjudged, and be returned before a final ' decree.” This provision was, no doubt, adopted with a view to remove a difficulty, and some uncertainty in the practice growing out of the decision of this court in Dunbar’s ex'or v. Woodcock’s ex’or, 10 Leigh 628. 654; and in Moore v. Hilton et ais., 12 Leigh 1.
In the first-named case, the court held, that an opinion of the lower court given in the progress of an account upon exceptions to a report, or instructions to a commissioner, as to the propriety of allowing items of debit and credit, is not such a final decree, as precludes a party from taking new evidence touching the same question, without having obtained a review or rehearing of the decree.
In Moore v. Hilton, it was held, that after an interlocutory decree on a hearing, neither party has the absolute right to introduce new evidence in respect to a matter decided; but the right to introduce and use such evidence as a ground for changing or setting aside such decree, depends on the sound judicial discretion of the court, and the sufficiency of the excuse for the failure to produce the testimony in due time; to be offered to the court upon a motion or petition for a rehearing.
Under the present statute, when there has been an interlocutory decree, a deposition taken thereafter, cannot be read as to any matter thereby adjudicated, unless indeed as the foundation for a motion or petition to rehear the cause.
*If no interlocutory decree has been rendered, or even though one has been rendered, a deposition taken, and returned before a final hearing as 'to any matter not adjudicated, may be read. But the right is not an absolute one. The statute does not say the deposition shall be, but it may be read.
It could hardly have been intended that after a cause had been referred to a commissioner and ample opportunity offered both parties to introduce their witnesses, and after the commissioner had made his report, and the cause was ready for a hearing, that one of them should have the absolute right at any time thereafter, to bring forward his testimony, deliberately or negligently withheld without cause from the commissioner, and demand it shall be read upon a controverted matter of fact, passed upon by the commissioner and made the subject of the report.
Such a construction would be but a premium for negligence, and would place it in the power of one or the other of the parties, in manv cases to nrotract litigation almost indefinitely. Whether testimony thus delayed will be heard, must in every case depend upon a sound judicial discretion, to be exercised upon the facts of the case, the nature of the evidence, the reasons given for the delay, and a variety of circumstances which must be adjudged as they arise.
The maxim that the laws assist those who are vigilant, not those who 'sleep over their rights, applies not only to the operation of statutes, but to the action of suitors in the conduct of their causes.
In the case before us, the reading the ap-pellees’ depositions would have involved a continuance of the cause when it was ready ror a hearing, a recommittal of the commissioner’s report, and a reopening of the case for the introduction of other testimony, and a promulgation of the controversy. The adoption of such rule *would not only be unjust in this particular case, but it would furnish an extremely bad precedent in other cases. I think therefore the circuit court did not err in proceeding to decide the case without reference to the appellant’s depositions.
It may be proper to say, that the case of Summers v. Darne, 31 Gratt. 791, has no *586 sort of application to the present case. There a petition for a rehearing was filed, founded upon depositions previously taken. It was objected that the depositions could not be read; but this court held there .is no rule of law prohibiting a party from taking his depositions even after an interlocutory decree, merely as a foundation for a motion or petition to rehear the decree. The depositions of course were only admitted in view and in connection with such petition showing a proper case for a rehearing.
• There is but one other point to be considered, and that is whether the appellee is to be held to account to his co-partner Shepherd, for the money collected by him from the government at Washington. It very satisfactorily appears, indeed it is conceded, that Shepherd himself could not have collected any part of the fund, nor would his share have been paid to any one else in consequence of his supposed, disloyalty. While on the other hand the appellee could have pbtained payment of one-half, 'or his share of the money. This was well understood both by Shepherd and the appellee'. It was accordingly agreed between them that the appellee should go to Washington, if he pleased, and at his own expense prosecute the claim, and if he succeeded in getting not more than his share or proportion, as one-half, he was entitled to retain it without accounting to Shepherd for any part of it. The appellee received from the government a sum not equal to his half, or anything approximating it. It is now claimed that this release by Shepherd was without consideration. *and that he is entitled by virtue of his relation as partner to receive his share of what was so collected by the appellee.
Without now entering into an enquiry whether such an arrangement between partners could be enforced, as an executory contract, it is sufficient to say, that the agreement being made after the partnership is dissolved, and the appellee having actually received the money, he cannot be required to refund it, there being no suggestion of fraud, surprise or unfair dealing. It has become an executed contract, which in itself is sufficient consideration. For even a gift made perfect by the delivery is an executed contract, being founded on the mutual assent of the parties in reference to a right or interest passing between them. 2 Kent Com. 483; Minor Institutes. vol. 4, n. 31; 2 Schouler Personal Property 59. As between Shepherd and the appellee the transaction is perfectly valid. It is not Shepherd himself who is complaining, but the appellant, a separate creditor of Shepherd.
If it be conceded that the appellant could successfully impeach the arrangement as a surrender or release without consideration, still the fund is first liable to the partnership demands, before any payment can be made of the appellant’s claim as a separate creditor. The report of the commissioner shows that the amount due the appellee as partner by Shepherd is largely in excess of any supposed interest Shepherd might have in the funds received from the Federal government. In any view that may be taken, the appellant has no just cause of complaint. Upon the whole case, I think the decree should be affirmed for the reasons already stated.
The other judges concurred in the opinion of Staples. J.
Decree affirmed.